IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PATRICIA MARTINEZ,

    Plaintiff,

v.                                                                                                            Civ. 07-635 JEC/LFG

UNITED PARCEL SERVICE, INC.;
and DAN POWELL, ALAN SCHWABENBAUER,
FRANK SANTIAGO and JESSE PACHECO,
individually and on behalf of United Parcel
Service, Inc.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on *Plaintiff's Motion to Amend Complaint*, filed September 19, 2007 (*Doc. 19)*("Motion"). The Court, having considered the Motion, the parties' briefs, the relevant authority, and being otherwise fully advised, grants the Motion in part and denies it in part.

**I.     Background**

On July 3, 2007, Plaintiff Patricia Martinez filed a Complaint against her former employer, United Parcel Service Inc. ("UPS"), alleging unlawful discharge based on age, sex, disability and opposition to discriminatory practices. At present, Plaintiff's claims are: refusal to make a reasonable accommodation under the Americans with Disabilities Act (ADA) (Count 1); discriminatory discharge under the ADA (Count 2); sexual discrimination in violation of Title VII (Count 3), age discrimination under the Age Discrimination Employment Act (ADEA) (Count 4); retaliation in violation of the ADA (Count 5); retaliation in violation of Title VII (Count 6); retaliation in violation of the ADEA (Count 7); violation of the Civil Rights Act of 1991 (Count 8);

violation of the New Mexico Human Rights Act (Count 9); and prima facie tort (Count 10).

Plaintiff seeks leave to add five additional counts, including two counts against UPS, one count against four individual managers with UPS (hereinafter collectively "Individual Defendants"), and two counts against all Defendants. The purported causes of action consist of: wrongful termination and negligent training, supervision, retention and investigation against UPS; intentional interference with employment contract against the Individual Defendants; and intentional infliction of emotional distress and civil conspiracy against all Defendants.[1]

## II. Legal Standard

Motions to amend pleadings to add claims or parties are governed by Federal Rule of Civil Procedure 15(a). The Rule states in relevant part that "a party may amend the party's pleading only by leave of the court . . . and leave shall be freely given when justice so requires." FED.R.CIV.P. 15(a). "In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . . ," leave should be readily granted. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "The liberal granting of motions for leave to amend reflects the basic policy that pleadings should enable a claim to be heard on its merits." *Calderon v. Kan. Dep't of Soc. and Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999). "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying

---

[1] The Court notes that the prima facie tort claim is asserted against "All Defendants" in the proposed Amended Complaint, whereas in the original Complaint, the same claim was only asserted against UPS. UPS does not address the addition of the Individual Defendants to this claim. The Court will allow Plaintiff to add the Individual Defendants to the prima facie tort claim. *See generally* Discussion, part III. A. *infra*.

reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman,* 371 U.S. at 182.

## III. Discussion

### A. Joining Individual Defendants

UPS argues generally that it is superfluous to name the Individual Defendants as parties to this lawsuit and the proposed Amended Complaint is completely devoid of factual allegations that any Individual Defendant acted outside the course and scope of their employment. In support, UPS notes the inconsistent language of the proposed Amended Complaint as compared to that in the Motion. Specifically, in her proposed Amended Complaint, Plaintiff states that "[a]t all times described herein, these individual Defendants were acting within the course and scope of their employment with UPS ... ," Mot., Ex. A at 2, while language in the accompanying Motion explicitly states that Plaintiff "has additional claims against individual defendants . . . acting within and without the course and scope of employment." Mot. at 1. UPS's unsupported argument, however, does not comprise the legal test.

Respondeat superior does not necessarily safeguard the Individual Defendants from liability simply because the alleged violations were within the scope of their employment. *See, e.g., Kalawe v. KFC Nat'l Management Co.*, 1991 U.S. Dist. LEXIS 20073, at *10 (D. Haw. July 16, 1991)("The doctrine of respondeat superior does not bar individual liability for individual torts, even when the individual is acting in a representative capacity."). Further, Plaintiff correctly observes that where UPS denies allegations that the Individual Defendants were acting within the course and scope of employment, Plaintiff should be allowed to pursue separate claims against these individuals. Accordingly, it is not *per se* improper or futile to permit Plaintiff to name Individual Defendants, subject to a preemption analysis.

.    **B.**    **Preemption**

UPS contends that all but one of Plaintiff's proposed amendments are futile because wrongful termination, negligent training, supervision, retention and investigation, intentional interference with employment contract, and intentional infliction of emotional distress all require interpretation of the collective bargaining agreement (CBA) between Plaintiff and UPS and are, accordingly, preempted by the Labor Management Relations Act (LMRA). Section 301 of the LMRA provides the following:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C § 185 (a). In considering the preemptive effect of the LMRA, the Supreme Court has stated that "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985). The Supreme Court has also instructed that "§ 301 cannot be read broadly to preempt nonnegotiable rights conferred on individual employees as a matter of state law . . . ." *Lividas v. Bradshaw*, 512 U.S. 107, 123 (1994). The critical question as articulated by the *Allis-Chalmers* Court is whether the "tort action . . . confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 213. "If the state tort law purports to define the meaning of the contract relationship, that law is pre-empted." *Id.; see also*,

4

*Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1998)("[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted . . . ."). With this in mind, the Court turns to Plaintiff's proposed state law claims.

### i.     Wrongful Termination against UPS

Plaintiff alleges that she was wrongfully discharged in retaliation for her engagement in protected activities, namely "opposing illegal employment practices." Mot., Ex. A at 15. UPS contends that because Plaintiff is protected by the CBA, any retaliatory discharge claim beyond provisions covered in the employment contract is unnecessary and inapplicable. Yet, "so long as the state law cause of action is concerned not with the employer's contractual rights to discharge the employee, but rather with its motives in exercising that right, the [collective bargaining agreement] is not relevant and preemption does not apply." *Mowry v. United Parcel Service*, 415 F.3d 1149, 1156 (10th Cir. 2005)(quoting *Jarvis v. Nobel/Sysco Food Services Co.*, 985 F.2d 1419, 1427 (10th Cir. 1993). Here, since Plaintiff's wrongful termination/retaliation claim questions the motivation behind the termination, as opposed to UPS' ability to terminate her employment under the CBA, the Court determines the claim is not preempted by § 301.

### ii.     Negligent Training, Supervision, Retention and Investigation against UPS

Plaintiff asserts that she has suffered damages as a result of the "negligence of UPS in failing to protect [her] from illegal statutory discrimination and retaliation . . . ." Reply at 7. In *Rivera v. Smith's Food & Drug Ctrs.*, No. Civ. 05-1049 RB/ACT, 2006 U.S. Dist. LEXIS 76760 (D.N.M. Feb. 16, 2006), the court held that "'the proper standard for determining whether an employer should be held liable for negligent supervision . . . of an employee [is] . . . whether the employer knew or reasonably should have known that some harm might be caused by the acts or omissions

5

of the employee who is entrusted with such position.'" *Id.* at *18 (quoting *Ocana v. American Furniture Co.*, 91 P.3d 58, 73 (2004)). UPS argues that to answer this question, the Court must review the disciplinary measures set forth in the CBA.

In her Reply brief, Plaintiff modified her proposed claim and now asserts that UPS' duty is grounded in state and federal law, separate and apart from the CBA. Reply at 6-7. Yet the Court finds, instead, that in order to determine whether UPS knew or reasonably should have known that Plaintiff may be harmed as a result of the acts or omissions of the Individual Defendants, it would necessarily have to consider UPS' duties as stated in the CBA. *See, e.g., Rivera*, 2006 U.S. Dist. LEXIS 76760 at *18 ("Any duty to effectively train and supervise managers, or breach of such duty, is inextricably intertwined with the issues of discipline.")(internal citations omitted). Accordingly, this claim would be futile as it is preempted by § 301.

### iii. Intentional Interference with Employment Contract against Individual Defendants

Plaintiff contends that she was wrongfully terminated because of the Individual Defendants' interference with her employment contract with UPS. In order for Plaintiff to establish liability for intentional interference with employment contract, she must demonstrate that (1) the Individual Defendants had knowledge of the contract between Plaintiff and UPS, (2) performance of the contract was refused, (3) the Individual Defendants played an active and substantial part in causing Plaintiff to lose the benefits of the contract, (4) damages flowed from the breached contract, and (5) the Individual Defendants induced the breach without justification or privilege to do so. *Ettenson v. Burke*, 17 P.3d 440, 446 (N.M. Ct. App. 2001)(internal citations omitted).

Plaintiff cites to *Romero v. Hanger-Silas Mason Co., Inc.*, 739 F. Supp. 1472 (D. N.M. 1990) in support of her proposition that she has a right to "enjoy and maintain her employment with UPS

without interference from any other individual . . . ." Reply at 8. While *Romero* did allow a claim for interference with contractual relations to proceed, the court held plaintiff's "interference claim [to be based] based not on interference with the union contract, but rather on interference with an implied contract . . . ." *Romero*, 739 F. Supp. at 1478. Here, Plaintiff does not allege the presence of another employment contract and does not contest UPS' assertions that the governing employment contract is the CBA. After reviewing the elements of this claim, it is clear that consideration of the CBA would be necessary in determining its merits. *See, e.g., Steinbach v. Dillon Companies, Inc.*, 253 F.3d 538, 540-41 (10th Cir. 2001) (affirming LMRA preemption of tortious interference claim in employment context). Accordingly, the Court finds this claim to be preempted by § 301 and the amendment would be futile.

      **iv.**     **Intentional Infliction of Emotional Distress against all Defendants**

Plaintiff alleges that "all Defendants intentionally inflicted upon [her] severe and extreme emotional distress." Mot., Ex. A at 16. Specifically, Plaintiff states that she was mistreated "in retaliation for her engaging in activity protected by federal and state anti-discrimination statutes, such as: (1) requesting accommodation for her disability; (2) articulating to management her opposition to illegal gender, age and disability discrimination; and (3) filing a charge of discrimination with the New Mexico Human Rights Division which directly resulted in her retaliatory discharge." Reply at 8.

"The following elements must be proven to establish a claim of intentional infliction of emotional distress: '(1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the claimant's mental distress.'" *Trujillo v. Northern Rio Arriba Elec. Co-op, Inc.*, 41 P.3d 333, 342

(2001)(quoting *Hakkila v. Hakkila*, 812 P.2d 1320, 1330 (N.M. Ct. App. 1991). UPS argues that a determination as to whether its conduct or that of the Individual Defendants is "extreme or outrageous" cannot be made without an examination of the relevant language in the CBA. The Court agrees and notes that Plaintiff's reliance on *Garley v. Sandia Corp.*, 236 F.3d 1200 (10th Cir. 2001) is misplaced. In *Garley*, the Tenth Circuit concluded that a "claim of intentional infliction of emotional distress is preempted only to the extent that the claim is based upon [defendant's] actions leading to the termination of [plaintiff's] employment . . . ." *Id.* at 1215. Here, as Plaintiff's claim is directly based upon UPS' actions leading to the termination of her employment, Plaintiff's claim is preempted by § 301. *See also*, *Mowry*, 415 F.3d at 1157 ("Any argument that § 301 does not preempt [an intentional infliction of emotional distress] claim is foreclosed by circuit precedent."). Notwithstanding *Romero v. Hanger-Silas Mason Co., Inc.*, 739 F. Supp. 1472 (D. N.M. 1990)(a determination of extreme or outrageous conduct does not require interpretation of the CBA), the Tenth Circuit has held that "an employee's outrageous conduct claim is 'pre-empted by § 301 because the outrageousness of [the] supervisor's conduct could not be evaluated without resort to the collective bargaining agreement . . . .'" *Mowry,* 415 F.3d at 1157; *see also Steinbach*, 253 F.3d at 541; *Garley*, 236 F.3d at 1214. Thus, the Court determines that the would-be intentional infliction of emotional destress claim is preempted by § 301 and allowing it would be futile.

    **v.**  **More Definite Statement on Civil Conspiracy against all Defendants**

UPS moves the Court for an order directing Plaintiff to provide a more definitive statement as to the circumstances surrounding the civil conspiracy claim, and Plaintiff expresses willingness to comply. *See* Reply at 9. The Court exercises its discretion under Rule 12(e) of the Federal Rules of Civil Procedure and requires that Plaintiff provide more specific allegations as to the circumstances surrounding the alleged conspiracy.

WHEREFORE,

**IT IS ORDERED** that *Plaintiff's Motion to Amend Complaint* (Doc. 19), is GRANTED in part and DENIED in part as follows:

    **I.**    Leave to amend is **DENIED** as to the claims for negligent training, supervision retention and investigation; intentional interference with employment contract; and intentional infliction of emotional distress;

    **II.**    Leave is **GRANTED** to add the wrongful termination claims;

    **III.**    Leave is **GRANTED** to add Individual Defendants to the prima facie tort claim;

and

    **IV.**    Plaintiff shall provide a more definite statement as to the civil conspiracy claim at the same time Plaintiff files the amended complaint. Plaintiff shall specify the time, place and conduct of each defendant to have allegedly participated in the conspiracy.

Dated February 25th, 2008.

                                                  s/John Edwards Conway

                                                  _____
                                                  SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

Merit Bennett, Esq.
Santa Fe, NM

Talia V. Kosh, Esq.
Santa Fe, NM

Counsel for Defendants:

David Barton, Esq.
Phoenix, AZ

Eric B. Johnson, Esq.
Phoenix, AZ

Stan N. Harris, Esq.
Albuquerque, NM.